UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TARVARES JAMES WATSON,

                Petitioner,

vs.                                Case No. 3:13-cv-1570-J-39JBT

SECRETARY, DOC, et al.,

                Respondents.

_____

## ORDER

### I.  STATUS

Petitioner Tarvares James Watson challenges a 2008 (Duval County) conviction for first degree murder (count one), armed burglary with battery (count two), and attempted murder in the first degree (count three).[1]  Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) at 1.  He filed two Memoranda of Law (Docs. 4 & 12), and upon review, they are almost identical except for a few, minor handwritten modifications to the second Memorandum's case citations.[2]  Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc.

---

[1] Although Petitioner references a fourth count, attempted felony murder, the trial court vacated the sentence on the fourth count and set that count aside.

[2] Petitioner provides Appendices to his Memorandum of Law (Doc. 4), and the Court will hereinafter refer to the documents contained therein as "App."

18).   In support of their Response, they provide an Index to Exhibits (Doc. 18).[3]   Petitioner filed a Reply in Opposition to Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Reply) (Doc. 25).   See Order (Doc. 11).

Petitioner raises five grounds in the Petition, and this Court will address these five claims for habeas relief, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required.   After setting forth the standard of review, a brief procedural history will be provided.

## II.   STANDARD OF REVIEW

In this opinion, the Court will analyze the claims pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).   "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 562 U.S. 86, 98 (2011).   The three exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.   Id. at 100.   The state courts' factual

---

[3] The Court hereinafter refers to the documents contained in the appendix as "Ex."   Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the appendix.   Otherwise, the page number on the particular document will be referenced.   Also, the Court will reference the page numbers assigned by the electronic docketing system where applicable.

findings will be given a presumption of correctness unless rebutted with clear and convincing evidence, 28 U.S.C. § 2254(e)(1).  The Court will apply this presumption to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

Recently, the Eleventh Circuit set forth the parameters for a federal court to grant habeas relief when reviewing a state court's decision, as limited by the provisions of AEDPA:

> if a state court has adjudicated the merits of a claim, we cannot grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "[C]learly established federal law" under § 2254(d)(1) refers to the "holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (alteration in original) (quoting Williams, 529 U.S. at 413). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (alteration in

> original) (quoting <u>Williams</u>, 529 U.S. at 413).
> Under § 2254(d)(2), we may grant relief only
> if, in light of the evidence presented in the
> state court proceedings, no reasonable jurist
> would agree with the factual determinations
> upon which the state court decision is based.
> <u>Brumfield v. Cain</u>, 576 U.S. ----, 135 S. Ct.
> 2269, 2277 (2015).

<u>Raleigh v. Sec'y, Fla. Dep't of Corr.</u>, No. 14-14198, 2016 WL

3563623, at *5 (11th Cir. June 30, 2016).

### III.   PROCEDURAL HISTORY

As previously noted, the Court will provide an abbreviated

summary of the state criminal case, giving historical context to

the five grounds presented in the Petition for habeas relief.

Petitioner was charged by indictment with first degree murder,

armed burglary with battery, attempted murder in the first degree,

and attempted felony murder.  Ex. C at 14-15.  The state filed a

notice of intent to seek the death penalty, <u>id</u>. at 23; however, the

record shows that by the time of trial, there was no attempt by the

state to seek the death penalty.  Upon the withdrawal of the Public

Defender, the trial court appointed W. Charles Fletcher as counsel

for Petitioner.  <u>Id</u>. at 31-33.

On January 7-8, 2008, the trial court conducted a jury trial

on all four counts.  Ex. D.  The jury returned a verdict of guilty

as to all counts.  Ex. C at 340-46; Ex. D at 370-71, 375.  On

February 7, 2008, Petitioner moved for a new trial, Ex. C at 358-

59, and the trial court denied the motion.  <u>Id</u>. at 386.

On February 7, 2008, the trial court conducted its sentencing proceeding.  Ex. C at 383-405.  The court adjudicated Petitioner guilty and sentenced him to three consecutive life sentences and one concurrent life sentence.  <u>Id</u>. at 400-402.  The court entered its judgment and sentence on February 7, 2008.  <u>Id</u>. at 347-55.  The trial court set aside and vacated the conviction and sentence on count four.[4]  Ex. E.

Petitioner appealed his conviction.  Ex. C at 364.  He filed an amended appeal brief.  Ex. H.  The state answered.  Ex. I.  Petitioner replied.  Ex. J.  The First District Court of Appeal, on August 20, 2009, affirmed per curiam.  Ex. K.  The mandate issued on September 8, 2009.  Ex. M.  The First District denied rehearing, rehearing en banc and written opinion, and denied the request to recall its mandate.  Ex. N.

---

[4] Curiously, Respondents fail to mention the trial court's vacation of count four in their procedural history.  Response at 1-4.  The circuit court's September 15, 2008, re-recorded Judgment, reflects that count four was set aside and vacated.  Ex. E at 18.  It states that the sentence of February 7, 2008, with respect to count four only, is vacated and set aside per the judge's order.  <u>Id</u>.  Of import, the Florida Department of Corrections' Corrections Offender Network presently states that Petitioner's prison sentence history includes the attempted felony murder count (count four), for which Petitioner was sentenced to life.  As such, Respondents will be directed to take all action necessary to ensure that the Secretary of the Florida Department of Corrections is provided copies of the Order Granting Motion to Correct Sentencing Error, Ex. E at 9-10, and the re-recorded judgment, Ex. E at 11-18, and that the Department remove count four, the attempted felony murder count, from the Department's sentence history for Petitioner as it has been duly vacated by the state court.

On May 28, 2010, pursuant to the mailbox rule, Petitioner filed a Motion for Postconviction Relief. Ex. T at 1-50. The state responded. Id. at 53-55. On August 2, 2010, pursuant to the mailbox rule, Petitioner filed a reply. Id. at 108-48. Attached to the reply is Exhibit A, the supplemental police report referencing the statement of Ms. Liggins to Officer G. M. Nagle; Exhibit B, a portion of the Deposition of Christy Liggins; and Exhibit C, photographs of the parking lot. Id. at 149-56. The circuit court, adopting the reasons set forth in the state's response, denied the motion in its order entered on August 3, 2010. Id. at 56-57. Attached to the order is the state's response, a portion of the trial transcript, the motion for new trial and order denying new trial. Id. at 58-107. Petitioner moved for rehearing, and the circuit court denied it. Id. at 157-66.

Petitioner appealed. Id. at 167. The First District Court of Appeal, on December 8, 2010, per curiam affirmed the circuit court's decision. Ex. U. After denying rehearing, the First District issued the mandate on February 1, 2011. Ex. X. Petitioner sought certiorari, and on May 16, 2011, the Supreme Court denied certiorari. Ex. Z; Ex. AA. Ultimately, the Supreme Court denied rehearing. Ex. BB; Ex. CC.

Petitioner filed a second Rule 3.850 motion on February 4, 2011, pursuant to the mailbox rule. Ex. EE at 1-50. The circuit court, on January 9, 2013, denied the second motion. Id. at 51-96. The circuit court denied rehearing. Id. at 97-112. Petitioner

- 6 -

appealed.  <u>Id</u>. at 113-114; Ex. FF; Ex. GG.  The First District affirmed per curiam on May 28, 2013.  Ex. HH.  The appellate court denied rehearing.  Ex. II; Ex. JJ.  The mandate issued on August 5, 2013.  Ex. KK.  Petitioner sought certiorari, but the Supreme Court denied certiorari on October 7, 2013.  Ex. MM; Ex. NN; Ex. OO.

## IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In ground one, Petitioner raises a claim of ineffective assistance of trial counsel, complaining that counsel failed to move to suppress "the illegally obtained known blood sample/photograph evidence and their derivatives" in violation of the Fourth, Sixth, and Fourteenth Amendments.  Petition at 6. Petitioner failed to raise this ground of ineffective assistance of counsel in his original Rule 3.850 motion.  Ex. T at 1-50.

In his Petition at 7, Petitioner contends that he exhausted this ground in his second Rule 3.850 motion, Ex. EE at 1-50, which was denied on January 9, 2013.  <u>Id</u>. at 51-96.  Respondents, in their Response, assert that the first claim is unexhausted and procedurally defaulted.  Response at 7-12.

Pursuant to 28 U.S.C. § 2254(b), a petitioner is required to exhaust available remedies in the state courts.  <u>Ward v. Hall</u>, 592 F.3d 1144, 1156 (11th Cir.) ("A critical prerequisite for any petitioner seeking federal habeas relief is the requirement that he first properly raise the federal constitutional claim in the state courts."), <u>cert</u>. <u>denied</u>, 562 U.S. 1082 (2010).  This requires that

the petitioner fairly present his issues to the state's highest court.  Id.

This Court will inquire as to whether the claim raised in ground one is procedurally defaulted.  If it is defaulted "pursuant to an independent and adequate state procedural rule," the claim is barred from federal habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  In order to establish cause, the petitioner is required to identify an objective, external factor that impeded his ability to raise the claim in the state courts.  Henry v. Warden, Ga. Diagnostic Prison, 750 F.3d 1226, 1230 (11th Cir. 2014) (citation omitted).  In order to establish prejudice, the petitioner must show that there is a reasonable probability that the result of the proceeding would have been different absent the impediment. Lucas v. Warden, Ga. Diagnostic and Classification Prison, 771 F.3d 785, 801 (11th Cir. 2014), cert. denied, 136 S.Ct. 135 (2015).

Petitioner claims that the first Rule 3.850 motion was not actually rejected on its merits but on legal insufficiencies; therefore, he contends the trial court's initial post conviction ruling allowed for the circuit court to reach the merits of the second Rule 3.850 motion without a procedural bar.  Reply at 3-5. He also suggests it would be a manifest injustice to not reach the

- 8 -

merits of this ground. <u>Id</u>. This Court is not persuaded. First, with regard to Petitioner's contention that the first Rule 3.850 motion was dismissed or rejected based on legal insufficiencies, the circuit court did not find the first rule 3.850 motion legally insufficient, a ruling which would have allowed for an opportunity to amend or re-file the motion to cure the underlying deficiencies. Instead, the court denied the motion for the reasons set forth in the state's response. Ex. T at 56. Indeed, the state's response is adopted and attached to the court's order denying post conviction relief. <u>Id</u>. at 58-60.

In the state's response to the Rule 3.850 motion, after setting forth the <u>Strickland</u>[5] standard for obtaining relief on a claim of ineffective assistance of counsel, the state argued that each ground was "unfounded" and that the motion should be denied without a hearing. <u>Id</u>. at 58. After providing a brief rendition of the facts, the state said "[t]his overwhelming evidence of guilt clearly demonstrates that any alleged error on the part of defense counsel surely would not have effected the outcome of this trial." <u>Id</u>. at 59. In short, the circuit court found that Petitioner failed to establish prejudice as required under <u>Strickland</u>.

Thus, the record shows that the state, in its response, addressed the grounds claiming ineffective assistance of trial counsel raised in the first Rule 3.850 motion. <u>Id</u>. at 59-60.

---

[5] <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).

After doing so, the state asked for the denial of the claims and the post conviction motion, not the dismissal of the post conviction motion based on legal insufficiencies.  Id.  As such, the circuit court's order adopting by reference the state's response is a denial of the post conviction motion on its merits. Indeed, under these circumstances, there is no doubt that the circuit court denied the motion on its merits.

When Petitioner attempted to raise an additional claim of ineffective assistance of counsel in a second Rule 3.850 motion, the circuit court, without hesitation, rejected the motion as successive "in that Defendant previously filed a 3.850 motion alleging ineffective assistance of counsel, which this Court denied on its merits and which was affirmed on appeal."  Ex. EE at 53. Although Petitioner asserted there was an objective, external factor that impeded his ability to raise the claim in the state courts, a page limitation and a denial of his request to enlarge the page limit, the circuit court rejected Petitioner's excuse for failing to properly raise his claim in his first Rule 3.850 motion. Id.  The circuit court found page limitations are within a trial court's discretion and there is no exception allowing for piecemeal litigation of claims, particularly with respect to claims of ineffective assistance of counsel.  Id.

Of note, Petitioner's original Rule 3.850 motion consists of fifty type-written pages.  Petitioner's ability to raise potentially meritorious post conviction claims was not unduly

- 10 -

circumscribed by the state circuit court, as evidenced by the very lengthy and detailed original post conviction motion and the allowance for a fifty-page motion to be filed.  Therefore, the page limit requirement did not constitute an external factor that prevented Petitioner from raising his claim.

In its conclusion, the circuit court found the second Rule 3.850 motion "successive and procedurally barred as it constitutes an abuse of the procedure governed by Rule 3.850."  Id.  Although the circuit court alternatively found no merit to the claim for relief, this Court must honor the state court's explicit reliance on a state-law ground for rejecting this claim because the state court explicitly invoked a state procedural bar rule as a separate and independent basis for its decision.  Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).  It is quite imperative to recognize that, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, **the federal court should apply the state procedural bar and decline to reach the merits of the claim.**"  Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (citations omitted) (emphasis added), cert. denied, 513 U.S. 1061 (1994).  See Marek v. Singletary, 62 F.3d 1295, 1301 (11th Cir. 1995) (finding that when a state court addresses both the independent state procedural ground and the merits, the federal court should apply the bar and decline to reach the merits), cert. denied, 519 U.S. 838 (1996).

Therefore, the Court will not reach the merits of the claim unless Petitioner shows cause and prejudice or a fundamental miscarriage of justice. Here, Petitioner has not shown cause for his default because his failure to present the claim in his first Rule 3.850 motion is fairly attributable to his own conduct. Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999). As noted by the state court, fifty pages is a "reasonable benchmark" for a page limitation, and Petitioner certainly could have presented his claim within the reasonable limitations established by the state circuit court. Ex. EE at 53. Also, Petitioner has not shown that there were errors at trial that disadvantaged his defense so that he was denied fundamental fairness. The alleged deficiency of counsel about which Petitioner complains does not undermine confidence in the verdict. Thus, he has not shown the required prejudice.

Second, Petitioner asserts that there should be a manifest injustice exception recognized for his procedural default, referencing Martinez v. State, 935 So.2d 28, 29 (Fla. 3rd DCA 2006) (recognizing affirmative misadvice by counsel on the record concerning the amount of time the petitioner could be sentenced to if he proceeded to a hearing on revocation of probation, and remanding for further proceedings) and other Florida state cases allowing for a manifest injustice exception for procedural default in state court proceedings where fundamental error is apparent on the face of the record, such as a double jeopardy violation. See

Rudolf v. State, 851 So.2d 839, 843 (Fla. 2nd DCA 2003) (same).

In this case, Petitioner is not complaining about a fundamental error apparent on the face of the record. On the contrary, he alleges his counsel was ineffective for failing to file a motion to suppress evidence prior to trial. Moreover, in a federal habeas proceeding, in order to overcome a procedural default without a showing of cause and prejudice, a petitioner must show a fundamental miscarriage of justice would occur if the underlying claim is not reached. A fundamental miscarriage of justice occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Wright, 169 F.3d at 705 (quoting Schlup v. Delo, 513 U.S. 298, 321 (1995) (citation to internal quotation omitted)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). Here, Petitioner has not shown that a fundamental miscarriage of justice would result if the claim of ineffective assistance of counsel is not addressed on its merits. Therefore, the merits of ground one will not be reached by the Court.

## B.  Ground Two

In the second ground of the Petition, Petitioner alleges a due process deprivation under the Fourteenth Amendments based on the insufficiency of the evidence to sustain his convictions. Petition

- 13 -

at 8.  Petitioner contends that the evidence presented at trial was insufficient for four reasons: (1) there is a lack of substantial evidence, viewed in the state's favor, from which a trier of fact could find, beyond a reasonable doubt, that Petitioner discharged an AK-47 in the back bedroom of the apartment; (2) Christy Liggins' testimony that Petitioner was in possession of an AK-47 is inherently incredible; (3) the record evidence, as a whole, viewed in the state's favor, "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence;" and (4) a rational trier of fact could find the record evidence sufficient and beyond a reasonable doubt "[o]nly by piling inference upon inference[.]"  Id.

Respondents urge this Court to find that this second ground "is improperly exhausted, procedurally defaulted and devoid of merit."  Response at 18.  Upon review, this claim is unexhausted and procedurally defaulted because, although Petitioner raised this claim of trial court error on direct appeal, he failed to present it as a federal constitutional claim.  Ex. H; Ex. J.

As previously noted, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"  Owen v. Sec'y, Dep't of Corr., 568

- 14 -

F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

Again, there are allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."  Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Once cause has been established, a petitioner must also demonstrate prejudice.  With respect to the prejudice requirement, a petitioner must show "that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."  Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).  The Schlup gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 133 S.Ct. 2759 (2013).

On direct appeal, Petitioner claimed that the trial court erred in denying the motions for judgment of acquittal when considering the special standard of review which applies to cases

based solely on circumstantial evidence. Ex. H at 12. There is no mention of a violation of due process of law, a federal constitutional violation, or reference to cases with decisions finding a due process violation.

Ordinarily a denial of a motion for judgment of acquittal presents a state law claim. It only rises to the level of a claim of constitutional dimension if it is asserted that the evidence was insufficient to support the conviction, and as a result of the deficiency, there was a violation of due process of law. Although Petitioner now couches his claim in terms of denial of due process of law, on direct appeal he asked: "[w]hether the trial court erred in denying the motions for judgment of acquittal." Ex. H at 12.

Respondents assert that Petitioner failed to advance his due process claim in the state court proceedings. Response at 18. In addressing the question of exhaustion, the Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 32 (2004). Upon review, Respondents' assertion that Petitioner did not exhaust his federal due process claim is supported by the record. Petitioner did not raise a claim of denial of due process of law pursuant to the Fourteenth Amendment to the United States Constitution in the state court proceedings.

Therefore, upon careful review and consideration of the state court record, the Court finds Petitioner did not fairly present his federal constitutional claim of denial of due process of law to the state courts.  Indeed, he did not sufficiently alert the state courts to the federal nature of his claim.  Because Petitioner failed to apprise the state court that the ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment, see Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (citation omitted), cert. denied, 543 U.S. 842 (2004), the Court finds the due process claim raised in ground two is unexhausted and procedurally defaulted.  In sum, the Court finds this claim has not been exhausted, and is therefore procedurally barred, Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar.  Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Assuming Petitioner's claim is not procedurally barred and that he did apprise the state court of a federal violation, Petitioner is not entitled to relief.  The First District Court of Appeal affirmed Petitioner's convictions on direct appeal, without issuing a written opinion.  Ex. K.  Thus, to the extent the claim was raised in the federal constitutional sense, and to the extent

that the federal constitutional claim was addressed, the state court's rejection of this ground is entitled to deference as required pursuant to AEDPA. See Ex. K.  The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground two because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Alternatively, this claim is without merit.  The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998).  "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State."  Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)).  As such, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt.  Thompson, 118 F.3d at 1448.

- 18 -

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed the offenses of first degree murder, armed burglary with battery, and attempted murder in the first degree. Petitioner took the stand and admitted he was at the scene of the crime.  While Petitioner did not stipulate to possession of the AK-47, a rational jury considering the circumstantial evidence of Petitioner's ownership of an AK-47 based on a witness testifying that he observed Petitioner with a gun case and clips for an AK-47; the victim's and Petitioner's drug dealing relationship and history; Petitioner's path of flight; the location of the discovered shell casings; the location of the shell casing from the victim's pistol; the location (bathroom) of the projectile from the pistol; Petitioner's bullet wound from that night and the blood found in the parking lot; the observation of an injured person carrying a weapon, fleeing the apartment, and entering a gray or silver car and fleeing the scene; Petitioner's blood found in the apartment, Petitioner's touch DNA evidence on an unexpended cartridge found in the apartment; evidence of consciousness of guilt by flight as evidenced by Petitioner providing false information to the police about his gunshot wound, giving false names to authorities, and attempting to evade arrest could reasonably find these offenses beyond a reasonable doubt.  In conclusion, considering each of these matters, any rational jury, after viewing the evidence in the light most favorable to the

prosecution, could have found the essential elements of the three offenses.

"When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." Johnson v. Alabama, 256 F.3d at 1172 (citations omitted). In this case, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed first degree murder, armed burglary with battery, and attempted murder in the first degree. Petitioner is not entitled to habeas relief on this ground.

## C. Ground Three

In his third ground, Petitioner raises a Giglio violation.[6] Petition at 10. He contends that he was deprived of life and liberty by the prosecution's knowing use of false testimony in violation of the Fourteenth Amendment. Id. The supporting facts presented for this claim are:

> On January 8th, 2008, the prosecution knowingly presented false testimony, during trial, when Christy Liggins testified that, on the night of July 14th, 2005, she told police that she saw Petitioner with an AK-47, leaving the scene in a Pontiac Sedan. This testimony is false, because Officer G. M. Nagle's Supplemental Report #6 at page 5 reveals,

---

[6] Giglio v. United States, 405 U.S. 150 (1972).

> contrarily, that on the night of July 14th, 2005, Christy Liggins actually told police that the purported suspect was 6'-2", toting a handgun, leaving the scene in a Toyota Corolla (See App. R) Supplemental Report #6, page 5, further reveals that Christy Liggins never identified Petitioner as the alleged suspect on the night of July 14th, 2005.

Id.

In support of his contention, Petitioner references Ms. Liggins' deposition testimony compared to her trial testimony. Id. Petitioner highlights that portion of the deposition testimony in which Ms. Liggins said she could not see the suspect's face because it was dark, and she was uncertain of her ability to recognize the suspect. Id. Petitioner argues that the prosecution knew Ms. Liggins' trial testimony was false because: (1) knowledge of the content of Officer's Nagle's Supplemental Report #6 at 5 is imputed to the prosecution, and (2) the prosecution was present for the deposition of Ms. Liggins. Id. Petitioner asserts that there is a reasonable likelihood that Ms. Liggins' false testimony at trial that Petitioner was in possession of an AK-47 on July 14, 2005 affected the judgment of the jury, and the prosecution's knowing use of her false testimony, without correction before the jury, violated Petitioner's right to due process of law. Id. at 10-11.

Upon review of the record, Petitioner exhausted his Giglio claim by raising it in his first Rule 3.850 motion. Ex. T at 3-10. The state responded, and the circuit court adopted the state's

reasoning in its decision.   Id. at 53-56.   In its response, the
state addressed the Giglio claim as follows:

> Grounds one (1), two (2) and three (3)
> generally allege the same error surrounding
> the testimony of an eye witness, Christy
> Liggins.   Defendant claims that Christy
> Liggins perjured herself when she identified
> Defendant in court, and Defendant cites Ms.
> Liggins testimony surrounding her inability to
> see the face of the injured individual fleeing
> the murder scene as evidence of this perjury.
> Defendant in his own motion however, correctly
> points out that Ms. Liggins testified in
> deposition that she believed she had seen the
> injured individual previously at the apartment
> complex.   Furthermore, DNA evidence confirms
> Ms. Liggins' identification.   There is no
> legal requirement that a witness identify a
> person before trial, nor is there any case law
> to suggest that in court identifications are
> per se unduly suggestive and inadmissible
> absent a previous identification.   Defense
> counsel thoroughly cross examined the [sic]
> Ms. Liggins about her ability to identify
> Defendant and nothing she testified to in
> trial was directly inconsistent with previous
> testimony.

Id. at 54 (record citation omitted).

The record shows the following.   In a report submitted by
police officer G. M. Nagle on July 14, 2005 (the date of the
crime), and approved by D. R. Schoenfeld on that same date, officer
Nagle wrote the following, in pertinent part:

> I was assigned to the perimeter on the east
> side of the apartment building.   Recruit D.E.
> Baez (61123) was assigned to guard the entry
> door of apartment 816 (within 20 ft. and
> visible).   We manned these posts from 0715
> until 1145.   We were relieved by Reserve
> Officer W. G. Rallison #8472.

I canvassed Apt. 807 and spoke with Ms. Liggins who stated the following:
Ms. Liggins stated that at around 0525, she heard two (2) shots fired.  She said a few seconds later she heard 5 to 6 more shots.  She looked out her living room window and observed a silver car with dark tinted windows that she believed was a Toyota Corolla backed into a parking space.

Ms. Liggins stated that she saw the first individual get into the car and start it up.  He was a heavy set black male with a short fade.  He was wearing a white tee shirt.  Ms. Liggins was not sure how tall [he] was.  She said that the driver was exiting the parking space when he saw the second individual running towards the car and stopped.  The second individual entered the vehicle and both parties departed the area in the gray vehicle and traveled north through the parking lot.

Ms. Liggins stated that the second individual appeared to be hurt and he was running hunched over.  She said he appeared to be 6'2" and was wearing a white tee shirt.  She was unsure of his hair style.  She believes he had a handgun.

App. R. at 1.

Almost two years later, on June 21, 2007, at her deposition, Ms. Liggins testified that she thought she had seen the suspects before.  Ex. T at 151.  In fact, although she said she could not describe the two suspects in detail, she knew she had seen both of them before at the victim's apartment.  Id.  When asked about the second suspect coming down the stairs, she stated:

I can't really describe him.  I mean, it happened so long ago that I couldn't really describe him to you.  Like I said, it was dark, so I couldn't really see his face.  But I just saw him come down the stairs.  And I knew that he had been hurt because he was

holding hisself [sic] and leaning up against the rail as he was coming down.  And he had a gun in the other hand.

<u>Id</u>. at 151-52.

Ms. Liggins said the gun looked like an AK-47.  <u>Id</u>. at 152. She described the shots fired as sounding like a couple of shots from an AK-47, followed by those from a small handgun.  <u>Id</u>.  She said she was afraid and did not open the door for the police but spoke to them the next day.[7]  <u>Id</u>. at 153.  When asked if she had ever seen the suspect before, while expressing some uncertainty, she responded that she thought so.  <u>Id</u>. at 154.  She said: "I know that he was -- I'm pretty sure that he was one of the guys that I had seen before, but I cannot be certain."  <u>Id</u>.  She then confirmed that both of the suspects had been upstairs to the victim's apartment before.[8]  <u>Id</u>.

At trial, Ms. Liggins testified that on July 14, 2005, at about 5:00 a.m., she heard gunshots that sounded like an AK-47, followed by a smaller handgun, and then heard an AK-47 again.  Ex. D at 45-46.  She said she saw a man run down the stairs and get in the driver's side of the car, followed by another man running down the stairs with a gun in his hand.  <u>Id</u>. at 46.  She said the second

---

[7] Of note, Officer Nagle's report reflects that Ms. Liggins spoke to him on the date of the incident, not the next day, although the crime took place in the very early morning hours.

[8] There is nothing in the record reflecting that Ms. Liggins viewed a line-up or was provided a photographic line-up with Petitioner's picture in it for her consideration prior to trial.

man looked as if he had been shot.  <u>Id</u>.  She stated the second man

got into the passenger side of the car with a rifle, an AK-47, and

then they drove off.  <u>Id</u>.

When asked to describe the driver, Ms. Liggins responded:

> I can't describe him to a tee but I've
> seen him before.  **I can point him out looking
> at him because I've seen him and the other guy
> in the neighborhood before, they've been over
> [to] his house a couple of times that's how I
> knew who they were.**  He was light skinned, he
> was -- he wasn't skinny bone but he had meat
> on him.  And that was pretty much all I saw
> and he had on a white T-shirt.

<u>Id</u>. at 47 (emphasis added).

Ms. Liggins described the car a "more like sedan Pontiac type

car."  <u>Id</u>.  She said it was a "gray car, silver car."  <u>Id</u>.  When

asked to describe the injured suspect, she said he was leaning on

the stairwell and holding himself when he came down the stairs.

<u>Id</u>.  Ms. Liggins said the suspect had a gun in his right hand.  <u>Id</u>.

at 47-48.  Ms. Liggins described the injured suspect as tumbling to

the car.  <u>Id</u>. at 48.  Ms. Liggins stated the suspect favored his

mid-torso area or stomach area, holding this area with his left

hand.  <u>Id</u>.

The prosecutor asked Ms. Liggins if she thought she would be

able to identify the injured person if she saw him again and to

look around the courtroom to see if she could see the individual.

<u>Id</u>.  Ms. Liggins identified Petitioner as the injured suspect.  <u>Id</u>.

at 49.  Ms. Liggins explained that she did not know the suspects on

a personal level, but she had seen them and the car in the apartment complex before on three occasions.  Id. at 50.

On cross, Ms. Liggins said she recognized the defendant's body shape and the car.  Id. at 52.  She said she saw his face, "the outline, the shape and his body."  Id.  She said she saw his face as he came down the stairs.  Id.  On redirect, she said the injured person was hunched over.  Id. at 58.  Ms. Liggins also said that the officer who took her statement wrote it outside the next day and acted "like he wasn't really paying attention or really mattered what I said but he wrote it down anyway."  Id. at 59.  On re-cross, she attested she saw the officer writing, but she had no idea what he actually wrote down because he was inside a car writing the report and she was standing outside of the car.  Id. at 60.  Ms. Liggins said the officer never indicated to her that he recorded that she had said that she saw the individual with a handgun, not an AK-47.  Id.

Petitioner claims there has been a Giglio violation because Ms. Liggins testimony at trial was not merely inconsistent with her prior statement to the police officer, but was an entirely different account of what she saw that morning.  There is a Giglio violation "when the prosecution solicits or fails to correct false or perjured testimony" and this testimony could "in any reasonable likelihood have affected the judgment of the jury."  Rodriquez v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1277, 1302 (2014) (citing Giglio, 405 U.S. at 153-54 (quoting Napue v. Illinois, 360 U.S.

- 26 -

246, 271 (1959)), cert. denied, 135 S.Ct. 1707 (2015).  The state commits a violation of Giglio if it uses perjured testimony and the prosecutor knew or should have known of the perjury.  Id. (citation omitted).

Thus, "[i]t is by now almost axiomatic that, '[i]n order to prevail on a Giglio claim, a petitioner must establish [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material.'"  Raleigh, 2016 WL 3563623, at *6 (citations omitted).  Testimony is material if there is any reasonable likelihood that the falsehood could have affected the result.  Id. (citation omitted).  However, there is an additional factor which this Court must take into consideration when reviewing a Giglio claim on habeas review; Petitioner must satisfy the Brecht standard.[9]  Therefore, if Petitioner fails to demonstrate the error had a substantial and injurious effect on the outcome of the trial, he would not be entitled to habeas relief.  Rodriquez, 756 F.3d at 1302 (citing Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1355-56 (11th Cir. 2011)).

It follows that pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas relief based on his Giglio claim unless he demonstrates that the state court's adjudication of the claim was contrary to, or an unreasonable application of Giglio, or was based

---

[9] Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

on an unreasonable determination of the facts, and he demonstrates that the Giglio error was not harmless under Brecht.

In this regard, Petitioner is challenging the state court's conclusion that Ms. Liggins did not provide false testimony. Indeed, he describes the state's response to the Rule 3.850 motion as bolstering and going "to the credibility of Christy Liggins['] testimony." Memoranda (Docs. 4 & 12) at 25. The record shows that Ms. Liggins, in her deposition testimony, said that she believed that she had seen both suspects before. Although she repeatedly stated that she could not describe the suspects in detail, she also said that she knew that she had seen them and the gray car in the apartment complex on previous occasions. She described the car as a gray or silver sedan. Although she initially described Petitioner as being 6'2", she also described him as being injured, coming down the stairs hunched over, and carrying a gun. At the deposition, she testified that she thought she had seen the injured suspect before and confirmed that she had seen the two suspects go to the victim's apartment on previous occasions. She described the gun as an AK-47, not a handgun.

At trial, on cross examination by defense counsel, Ms. Liggins said that the officer who interviewed her never indicated to her that he had written down or thought he heard her say that she saw the injured person with a handgun, not an AK-47. Ex. D at 60. She testified that the second suspect looked like he had been shot and he had a rifle, an AK-47, in his hand. She further testified that

she had seen the two suspects in the neighborhood before, and she knew who they were.  More specifically, she testified that she had seen them and the car in the apartment complex before on three occasions.  She again referred to the car as being gray or silver, but she added the descriptor "Pontiac type."  Ms. Liggins said that the injured suspect held his stomach area with his left hand. Finally, she identified Petitioner in the courtroom.

To the extent Petitioner is asserting that the state court made an unreasonable factual finding when it found Liggins' testimony was not false, Petitioner has not shown that no reasonable jurist would agree with the state court's factual determination.  See 28 U.S.C. § 2254(d)(2).  Indeed, this Court, in considering this claim,

> may not characterize these state-court factual
> determinations as unreasonable "merely because
> [we] would have reached a different conclusion
> in the first instance." Wood v. Allen, 558
> U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738
> (2010). Instead, § 2254(d)(2) requires that we
> accord the state trial court substantial
> deference. If "'[r]easonable minds reviewing
> the record might disagree' about the finding
> in question, 'on habeas review that does not
> suffice to supersede the trial court's ...
> determination.'" Ibid. (quoting Rice v.
> Collins, 546 U.S. 333, 341–342, 126 S.Ct. 969,
> 163 L.Ed.2d 824 (2006)).

Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015).

Here, the state court factual finding was not "unreasonable" under 2254(d)(2).  The circuit court did not apply an incorrect legal standard, as the court concluded that although Petitioner

claimed Christy Liggins perjured herself at trial, the record showed that her testimony was not "directly inconsistent with previous testimony."  Ex. T at 54.  By its ruling, in line with Supreme Court precedent, the circuit court determined there was no "deliberate deception of a court and jurors by the presentation of known false evidence[.]"  Giglio, 405 U.S. at 153.  The First District Court of Appeal affirmed this decision.  Ex. U.

Deference under AEDPA should be given to the state court's decision.  Petitioner raised the issue in his Rule 3.850 motion and on appeal of the denial of the Rule 3.850 motion, and the appellate court affirmed.  The state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to habeas relief on ground three.

Petitioner also asserts it was "objectively unreasonable for the post-conviction court to resolve that the false testimony was harmless," Memoranda (Docs. 4 & 12) at 27; however, upon review, the state court never found Liggins' testimony to be false. Indeed, the circuit court pointed out that upon thorough cross examination by defense counsel, "nothing she testified to in trial was directly inconsistent with previous testimony."  Ex. T at 54. Of note, her statement to the police officer was not sworn testimony and she testified at trial that she was unaware that the

officer wrote down that she said that the injured suspect carried a handgun rather than rifle or AK-47.  Upon review, her statement to the police officer was not directly inconsistent with both her deposition and trial testimony (two men fleeing, they enter a gray or silver car, the second man is injured and hunched over, and the second man carried a gun).

Petitioner failed to demonstrate there was "falsehood" or that the prosecutor used perjured testimony.  Also of significance, AEDPA requires that this Court presume the credibility findings of the state court to be correct.  See 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted this presumption with clear and convincing evidence.  As such, deference will be given to the state court's decision that Petitioner "failed to establish the factual predicate required for a Giglio violation." Rodriguez, 756 F.3d at 1305.  Thus, Petitioner is not entitled to habeas relief based on his Giglio claim.  Here, the state court's decision is not inconsistent with Supreme Court precedent, including Giglio and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Giglio, or based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on this ground.

### D.  Ground Four

In ground four, Petitioner raises a claim of ineffective assistance of trial counsel, complaining that counsel failed to impeach the prosecution's key witness with her prior inconsistent

statements contained in Supplemental Report #6 at 5, and for counsel's failure to investigate, interview and call Officer G. M. Nagle, in violation of the Sixth and Fourteenth Amendments. Petition at 12.  In his statement of supporting facts, Petitioner expounds upon this claim, asserting that counsel failed to impeach Christy Liggins' trial testimony with the Supplemental Report and her deposition testimony.  Id.  Petitioner also contends that counsel's failure to call Officer Nagle to testify about Liggins' initial statement deprived Petitioner of a just result at trial. Id. at 13.

In order to prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  Of import, the circuit court adopted the reasons set forth in the state's response, and the state's response recommended the denial of Petitioner's claim of ineffective assistance of counsel referencing the applicable two-pronged standard in Strickland as a preface to addressing Petitioner's multiple claims of ineffective assistance of counsel. Ex. T at 53.  In this regard, the circuit court was not only well informed of the applicable standard, it was also informed that all

that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel.  Id.

As noted previously, the circuit court found that defense counsel thoroughly cross examined Ms. Liggins and held that "nothing she testified to was directly inconsistent with previous testimony."  Ex. T at 54.  The record shows that defense counsel conducted a thorough cross examination of Ms. Liggins.  Ex. D at 51-58, 59-60.  She admitted that she could not see the second person when he got to the other side of the car.  Id. at 55.  She stated that she could not see his face over the roof of the car. Id. at 56.  She agreed that her view of the person was a "quick shot."  Id. at 57.  She testified it was dark outside, and she was not able to see the second suspect get into the car.  Id. at 57-58.

On re-direct, Ms. Liggins testified that she provided her statement to the police officer outside, but the officer acted like he was not paying attention or did not think her information mattered, but wrote it down anyway.  Id. at 59.  On re-cross, defense counsel honed in on Liggins' statement provided to the police.  Id. at 59.  Defense counsel asked Liggins if she watched the police officer write down the statement.  Id.  Liggins said she could not see what the officer wrote down because he was in a car and she was standing outside of the vehicle.  Id. at 60.  She said she saw the officer writing, but she could not see the content of the report.  Id.  Defense counsel specifically asked her about the discrepancies in her descriptions of the gun.  Id.

- 33 -

Pointedly, defense counsel asked the following question:

> Q    Did he ever indicate to you that you had
> said that you saw the person with a handgun
> and not an AK-47?
>
> A    No, he didn't say anything to me.  He was
> like okay, I've got it all written down, thank
> you, and I walked away.

Id.

Based on the record, defense counsel was aware of the content of the police report, and he fully cross examined Ms. Liggins concerning the content of her statement to the police officer. Once Ms. Liggins said she had no idea what the police officer actually wrote down, any decision by counsel not to call Officer Nagle to testify about the report was a reasonable decision on the part of defense counsel.  It was certainly made clear that the report said Ms. Liggins gave a statement which said she saw a handgun, but she testified in her deposition and at trial that she saw an AK-47.  Also of import, she did not identify the Petitioner as the second suspect until she observed him at trial.

In closing argument, defense counsel attacked Christy Liggins' trial testimony and in-court identification of Petitioner.  Ex. D at 293.  Defense counsel effectively challenged her trial testimony by referencing Detective Stucki's testimony that the police did not find anyone who could identify the shooter.  Id.  Defense counsel reiterated that the lead detective, with his "big fat notebook" on the case, found no one who could identify the shooter during the

police investigation. Id. Defense counsel challenged the jury to consider the content of Liggins' testimony as not being believable by asking them to consider the following: "[y]et Christy Liggins yesterday gets on the stand, she's been talked to by the police and she says she tells you that she hears gunshots," and two and a half years later, she is able to identify Mr. Watson in the courtroom. Id. at 293-94.

Petitioner has not shown that counsel's performance was outside the wide range of professional competence. Furthermore, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim raised in ground four of the Petition is without merit since he has neither shown deficient performance nor resulting prejudice.

The circuit court's decision to deny the claim of ineffective assistance of counsel is not inconsistent with Strickland. "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." Marshall v. Sec'y, 2016 WL 3742164, at *9 (quoting Kimmelman v. Morrison, 477 U.S. at 382). This standard is extremely difficult to meet, and even a strong case for relief does not win the day as long as the state court's contrary conclusion was reasonable.

The First District Court of Appeal affirmed the trial court's decision.  As the First District Court of Appeal did not give reasons for its summary affirmance, if there was any reasonable basis for the court to deny relief, the denial must be given deference by this Court.  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 187-88 (2011).  In this case, deference under AEDPA should be given to the state court's decision.  Here, the state court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u> and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

## E.  Ground Five

In his fifth and final ground, Petitioner raises another claim of ineffective assistance of trial counsel.  Petition at 14.  He claims his counsel was ineffective for failing to timely file a motion for new trial and to properly make argument in support of the motion.  Petitioner contends that as a result of these failures, his rights under the Sixth and Fourteenth Amendments were violated.  <u>Id</u>.  In his supporting facts, Petitioner notes that his counsel filed a motion for new trial on February 7, 2008, which contained four grounds, and the trial court denied the motion.  <u>Id</u>. at 14-15.  Petitioner submits that counsel's motion was deficient because, although he raised the weight of the evidence, he raised it *pro forma*, failing to argue credibility and point out

conflicting testimony.  _Id_. at 15.  Petitioner surmises that once counsel raised the issue, in order to be effective, he should have made argument and not rested on the content of the written motion. _Id_.

The trial record shows that trial counsel moved for a judgment of acquittal, and as to all four counts, he argued "that the State has actually presented the jury with a reasonable hypothesis of innocence on behalf of the defendant by introducing his video account of what happened to him that night."  Ex. D at 206-207. Trial counsel renewed his motion at the close of all of the evidence.  _Id_. at 268.

It is clear that trial counsel filed a Motion for New Trial on February 7, 2008.  Ex. C at 358-59.  He presented four grounds for relief: (1) the court erred in not granting the motion for judgment of acquittal made at the close of the state's case; (2) the court erred in not granting the motion for judgment of acquittal made at the close of all of the evidence; (3) the verdict is contrary to the weight of the evidence; and (4) the verdict is contrary to the law.  _Id_. at 358.  When the court inquired as to whether counsel was going to present argument, counsel responded "[j]ust the grounds I have set forth in the motion."  Ex. C at 386.  The trial court denied the motion.  _Id_.

Thereafter, after filing a Notice of Appeal, trial counsel filed a Statement of Judicial Acts to be Reviewed, solely

referencing the alleged error by the trial court in denying the motion for new trial. Id. at 366. On direct appeal, appellate counsel, raised the issue whether the trial court erred in denying the motions for judgment of acquittal. Ex. H. The state responded that there was substantial, competent evidence to support the jury's verdict. Ex. I at 17-18, 21.

When Petitioner raised the claim of ineffective assistance of counsel in his Rule 3.850 motion, the state responded and the circuit court adopted the reasons set forth in the response:

> Ground four (4) alleges counsel failed to timely file a motion for new trial and properly argue the weight of the evidence ground. This is refuted by the record as the Court heard a motion for new trial and considered the weight of the evidence in denying the motion for new trial.

Ex. T at 54-55 (record citation omitted).

This decision constitutes a decision on the merits.[10]  <u>Id</u>. at 56.  The appellate court affirmed.  The Court finds that the denial of post conviction relief on this ground was a reasonable interpretation of the facts, and the trial court did not misapply or reach a result contrary to <u>Strickland</u>.  Thus, AEDPA deference is due to this state court decision, and Petitioner is not entitled to habeas relief.  In this ground, Petitioner has failed to show deficient performance or prejudice.  The Court finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).  As such, the

---

[10] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington</u>, 562 U.S. at 99.  Here, the record shows the trial court considered the weight of the evidence, and after duly considering the weight, denied the motion for new trial.  Ex. C at 358-59, 386. There is a presumption of a merits determination under these circumstances.  <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989).  Indeed, the trial court did not rely on a state-law ground (like untimeliness) to reject the motion for new trial.  In this instance, the same judge that denied the motion for new trial denied the Rule 3.850 motion; therefore, it is quite apparent that the judge considered the weight of the evidence and found that the verdict was not contrary to the weight of the evidence.  In the alternative, Petitioner was not prejudiced by the untimely filing of the motion for new trial because, even assuming counsel had timely filed the motion for new trial, the trial court rejected the motion, finding the verdict was not contrary to the weight of the evidence.

claim of ineffective assistance of counsel raised in ground five of the Petition is denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[11]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   **Respondents** shall take all action necessary to ensure that the **Secretary of the Florida Department of Corrections** is

---

[11] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

provided copies of the Order Granting Motion to Correct Sentencing Error, Ex. E at 9-10, and the re-recorded judgment, Ex. E at 11-18, and that the Department remove count four, the attempted felony murder count, from the Department's sentence history for Petitioner as it has been duly vacated by the state court.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of August, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/26
c:
Tarvares James Watson
Counsel of Record
Julie Jones, Secretary, Florida Department of Corrections